

**FILED**
**Sep 29, 2021**
**01:51 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Denise R. Lewallen,** | ) | **Docket No. 2019-01-0366** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Home Healthcare of East Tennessee,** | ) | **State File No. 14833-2018** |
| **Inc.,** | ) | |
| **Employer,** | ) | |
| **And** | ) | **Judge Audrey A. Headrick** |
| **United Wisconsin Ins. Co.,** | ) | |
| **Insurance Carrier.** | ) | |

---

## COMPENSATION ORDER

---

Ms. Lewallen requested that the Court award her permanent total disability benefits or, alternatively, extraordinary relief. If she is not entitled to those benefits, the Court must determine the applicable permanent medical impairment rating and the extent of her permanent disability. Home Healthcare disputed her entitlement to permanent total disability benefits or extraordinary relief and asserted she is limited to permanent partial disability benefits. It also disputed the compensability of her hernia and alleged mental injury, and her entitlement to additional temporary disability benefits. It further asserted a credit for temporary disability benefits it paid her after she resigned. After a September 13, 2021 Compensation Hearing, the Court holds Ms. Lewallen is entitled to permanent total disability benefits but denies the requested treatment for her hernia and alleged mental injury.

### History of Claim

While working for Home Healthcare, Ms. Lewallen sustained multiple physical injuries in a February 10, 2018 motor vehicle accident, which are undisputed, to both feet and ankles, her left clavicle and right arm, as well as multiple cervical disc herniations with radiculopathy. She also alleged hernia and PTSD claims, which Home Healthcare disputed, but it authorized medical treatment for all other injuries.

*Medical Treatment*

Dr. Scott Smith, a board-certified orthopedic surgeon, performed emergency surgery and three additional surgeries in the seven months that followed, installing hardware for Ms. Lewallen's injuries. He repaired the fractures in both feet and ankles, as well as the left-clavicle and right-arm fractures. Notably, the second surgery on her right arm, foot, and ankle required taking a bone graft from her iliac crest.

At Ms. Lewallen's request, Dr. Smith released her to full-duty work without restrictions on January 28, 2019.

Two months later, she returned complaining of right-ankle pain when driving or standing and said she had resigned from her position because she "[was] afraid for her safety and not able to perform the duties without significant pain." During this March visit, Dr. Smith observed that her right arm was infected and anticipated hardware removal if it did not improve. He decided Ms. Lewallen was "disabled from being [a] home health care worker at this time" due to her inability to remain on her feet all day or to walk on uneven ground based on "the severity of her injury and her subtalar arthrodesis."

Despite this, Dr. Smith assigned no restrictions, placed her at maximum medical improvement, and assigned a medical impairment rating of six percent to the whole person. However, a month later, he performed another surgery on Ms. Lewallen's right arm to remove the hardware due to her continued infection.

Dr. Smith's testimony suggested that, in hindsight, he prematurely placed Ms. Lewallen at maximum medical improvement and should have assigned her permanent restrictions. He described it as "curious" that he did an impairment rating while treating an active problem with her right arm. He clarified that Ms. Lewallen had not been at maximum medical improvement. Further, he adopted the functional capacity evaluation findings of permanent restrictions in the light-duty category and noted Ms. Lewallen was unsuccessful at working in the medium-duty category as a certified nursing assistant.[1] He described the light-duty category as working exclusively in a sedentary job sitting ninety-nine percent of the time. After his deposition, Dr. Smith signed a Physician Certification Form stating that Ms. Lewallen "no longer has the ability to perform the employee's pre-injury occupation" due to permanent restrictions from the injury.

During his deposition, Dr. Smith testified regarding the independent medical evaluation of Dr. William Kennedy, also a board-certified orthopedic surgeon. Dr. Smith

---

[1] Home Healthcare objected to the functional capacity evaluation, an exhibit to Dr. Smith's deposition, asserting lack of authenticity and hearsay. However, it is unnecessary for the Court to rule on the objection because Dr. Smith reviewed the functional capacity evaluation and adopted the findings as his own. Tenn. R. Evid. 703.

reviewed and adopted Dr. Kennedy's conclusions regarding Ms. Lewallen's permanent impairment.[2] Specifically, Dr. Smith noted that Dr. Kennedy's ratings included "all of the injuries," whereas his rating did not, and he candidly admitted that his March 11, 2019 impairment rating "is not valid at all."

Turning to the independent medical examination, Dr. Kennedy assigned individual, whole-person impairment ratings for Ms. Lewallen's injuries. His ratings included: ten percent for the right foot and ankle; eight percent for the left foot and ankle; two percent for the right arm; and two percent for the left clavicle.

Ms. Lewallen also received authorized treatment from Dr. Paul Johnson, a board-certified orthopedic surgeon, for her cervical injury. He diagnosed a disc herniation and nerve compression at C4-C5, C5-C6, and C6-C7. He performed an anterior cervical discectomy fusion at those levels. Dr. Johnson placed Ms. Lewallen at maximum medical improvement on September 29, 2020, and assigned a six-percent impairment to the whole person. He released Ms. Lewallen without restrictions, since she did not have a job, and stated she "should work based on her perception of her capabilities." Dr. Johnson stated she could return to some type of employment "[i]f she felt she was able to," and he acknowledged that returning to work is beneficial mentally, physically, and socially.

In addition, Ms. Lewallen received authorized follow-up care for her injuries from Katy Tilley, FNP.[3] The records reflect that Ms. Tilley prescribed pain medication and treated her for PTSD. In February 2019, Ms. Lewallen reported she "had to quit her home nursing job d/t pain from MVA accident . . . [s]he was unable to tolerate the pain when driving or assisting patients and anxious to drive, too." Ms. Tilley diagnosed Ms. Lewallen with "PTSD from [MVA]," prescribed an antidepressant, and referred her for counseling, which Home Healthcare denied.

As for Ms. Lewallen's unauthorized treatment, Dr. Thomas Layman saw her beginning on July 20, 2020, when she presented with pain from a right-sided hernia that developed in 2018. The office note said she stated it "now hurts." Ms. Lewallen described the hernia as "[s]lowly enlarging since MVA injury in 2018," and she believed her seatbelt caused the injury.

Dr. Layman testified about the primary cause of the hernia, which he related to the motor vehicle accident. He believed the bone graft of the iliac crest "weakened the abdominal wall that then led to her getting the hernia and then having to fix that," and it

---

[2] Home Healthcare objected to Dr. Kennedy's independent medical examination report, an exhibit to Dr. Smith's deposition, asserting lack of authenticity and hearsay. However, it is unnecessary for the Court to rule on the objection because Dr. Smith reviewed the independent medical examination report and adopted Dr. Kennedy's findings as his own. Tenn. R. Evid. 703.

[3] Before the accident, other providers prescribed Ms. Lewallen medication for anxiety and stomach problems.

"probably started getting bigger right after her iliac crest bone graft and then slowly weakened from there." Dr. Layman described a hernia developing in that location as a "one in a million" situation that "wouldn't happen unless somebody has cut in there and weakened the tissue in that area."

Dr. Layman surgically repaired Ms. Lewallen's hernia, assigned a sedentary restriction from July 20 through December 1, and placed her at maximum medical improvement on December 1 with no permanent impairment.

*Lay Testimony*

Ms. Lewallen outlined her education, training, and work history in her testimony. She is fifty-three years old (born April 11, 1968), obtained a general equivalency diploma in 1990 or 1991, and became a certified nursing assistant in 1991. She attended school for six months to become a licensed practical nurse but stopped for financial reasons. Five years ago, she additionally received a phlebotomy diploma. Her technology skills are limited; in past employment, Ms. Lewallen never used a computer in her work, took a computer training course or used a word processing program.

Ms. Lewallen testified about her experience as a certified nursing assistant. She worked twenty-eight years in that profession and approximately seventeen years for Home Healthcare. Her job required her to perform personal care of patients, including bathing, feeding, and transferring them from a bed to a seat or shower. She explained that certified nursing assistants perform a significant amount of lifting, twisting, and turning. Ms. Lewallen's job description classified the work as "moderate to heavy physical exertion on a regular and recurring basis."

Ms. Lewallen described her typical work routine before the accident. She worked for Home Healthcare forty or more hours per week from 7:00-8:00 a.m. until 4:00-5:00 p.m. She traveled to the patients' homes, where she spent forty-five minutes to an hour. Ms. Lewallen drove approximately twenty minutes to an hour to the next patient's home. She also worked a part-time certified nursing assistant job two to three nights per week, working until 11:00 p.m., so she could buy a home. Whenever she had time, she worked "private pay" side jobs.

Although Ms. Lewallen loved being a certified nursing assistant, she testified that on her return to work at Home Healthcare in February 2019, driving to patients' houses caused significant right-ankle pain and caused her feet to hurt. Due to the severity of her injury, Ms. Lewallen said she overcompensated with her left foot. She stated she was unable to assist patients from a sitting position to standing. Ms. Lewallen recalled that a patient lift device hit her injured right arm, causing significant pain. She described almost dropping a patient as the "last straw," causing her to resign on February 11, 2019.

In the Voluntary Separation completed by Ms. Lewallen, she wrote she was unable to safely perform her job. She described her right leg as "very painful with all the driving." Ms. Lewallen noted her inability to walk through patients' yards due to unlevel ground and needing to pivot due to her ankle instability. She wrote: "I have tried for 2 weeks. But I don't want to hurt anyone." Ms. Lewallen has not worked for any employer since she resigned.

Ms. Lewallen testified about her daily life after resigning. She lost her house after the accident and moved in with family. She prepares her own meals, does her own laundry, and walks her dog. However, Ms. Lewallen explained it takes her much longer to perform any task now than it did before the accident. Lifting heavy towels or blankets when she does laundry causes her right arm to give out. And, she is unable to walk very far with her dog.

As to her inability to work, aside from working at Home Healthcare, Ms. Lewallen previously worked as a certified nursing assistant at three skilled nursing facilities. Those jobs required her to perform the same physical level of personal care to patients. Ms. Lewallen stated she is unable to lift, pull, bend, walk long distances, and walk on uneven ground. Her right foot condition requires overcompensation of her left foot, and Ms. Lewallen described it as "exhausting" after standing or walking. She explained she cannot work in manufacturing due to the physical activity, at a restaurant due to being on her feet all day, or at an office, since she has no computer experience and cannot look down at a screen all day due to her neck.

Connie Norton, regional director of operations at Home Healthcare, also testified but as a hostile witness. She described Ms. Lewallen as reliable, honest, hard-working, and loved by patients. The Separation Notice completed by Ms. Norton stated that Ms. Lewallen "[r]esigned due to her car accident. Unable to work due to pain, safety concerns." Ms. Norton recalled Ms. Lewallen cried when she resigned because she was unable to continue performing her job. Ms. Norton said Ms. Lewallen worked well with people and could learn new work skills.

Finally, Lexi Absher, a former co-worker and friend, testified. She described Ms. Lewallen as going "above and beyond her duties" by performing extra tasks for patients. She stated Ms. Lewallen would work if she were able to do so. Ms. Absher agreed that Ms. Lewallen worked well with others and could "pick up new skills but not quickly."

### Findings of Fact and Conclusions of Law

At a Compensation Hearing, Ms. Lewallen must prove by a preponderance of the evidence that she is entitled to benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2020).

The Court first considers the compensability of Ms. Lewallen's hernia. For her

hernia claim, she is required to "definitely prove[] to the satisfaction of the court" five factors, including that the hernia appeared "*suddenly*" and was *"accompanied by pain."* Tenn. Code Ann. § 50-6-212(a) (Emphasis added).[4]  The hernia must result from an "injury by accident arising primarily out of and in the course and scope" of Ms. Lewallen's employment.  *Id.*

The record reflects Ms. Lewallen presented to Dr. Layman in 2020 with a right-sided hernia that developed in 2018 with enlargement since the motor vehicle accident, and she stated it "now hurts."  She said the hernia enlarged since the accident and believed her seatbelt caused it.  Dr. Layman identified the primary cause of the hernia as the accident and stated it gradually enlarged after the iliac crest bone graft.  The records do not mention sudden pain, which the statute requires.  Therefore, the Court holds Ms. Lewallen is not entitled to medical benefits or temporary disability benefits for the hernia.

The Court next turns to Ms. Lewallen's request for psychological treatment for PTSD.  Ms. Tilley, an authorized provider, diagnosed Ms. Lewallen with PTSD from the accident and referred her for psychological counseling, which Home Healthcare denied.

A "mental injury" is defined as "a loss of mental faculties or a mental or behavioral disorder."  Tenn. Code Ann. § 50-6-102(17).  To qualify as compensable, a mental injury must arise "primarily out of a compensable physical injury or an identifiable work-related event resulting in a sudden or unusual mental stimulus."  *Id.*  Moreover, the aggravation of a pre-existing mental condition is not compensable "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment."  Tenn. Code Ann. § 50-6-102(14)(A).

Considering those legal principles, Ms. Lewallen did not satisfy her burden regarding her mental injury claim.  First, a family nurse practitioner rather than a medical doctor made the diagnosis and referral.  However, a nurse practitioner cannot offer a causation opinion.  *Dorsey v. Amazon.com,* 2015 TN Wrk. Comp. App. Bd. LEXIS 13, at *9 (May 14, 2015).  In addition, no medical doctor gave the opinion that her mental condition "arose primarily out of and in the course and scope of employment," or words to that effect.  Therefore, the Court holds she did not prove entitlement to treatment for PTSD and denies her request.

*Permanent Vocational Disability*

The Court now turns to Ms. Lewallen's request for permanent total disability benefits.  Tennessee law provides that, "[w]hen an injury not otherwise specifically provided for in this chapter totally incapacitates the employee from working at an

---

[4] Ms. Lewallen also argued the bone graft surgery caused the hernia, so the natural consequence rule applies. Without any supporting case law, she argued the hernia statute is inapplicable.  The Court disagrees.

occupation that brings the employee an income, the employee shall be considered totally disabled[.]" Tenn. Code Ann. § 50-6-207(4)(B).

The assessment of permanent total disability is based on numerous factors, including the employee's skills and training, education, age, local job opportunities, and the capacity to work at the kinds of employment available in the disabled condition. *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986); *see also Duignan v. Stowers Mach. Corp.*, No. E2018-01120-SC-R3-WC, 2019 Tenn. LEXIS 224, at *21 (Tenn. Workers' Comp. Panel June 19, 2019). Although a medical expert's rating of anatomical disability is one of the relevant factors, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness." *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). In addition, the employee's "own assessment of [her] physical condition and resulting disability is competent testimony that should be considered[.]" *McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn. 1999); *see also Duignan*, at *21-22.

The Court first considers the medical proof. Dr. Smith noted that Ms. Lewallen was unsuccessful at working in the medium-duty category as a certified nursing assistant. He adopted the functional capacity evaluation findings of permanent restrictions in the light-duty category, which he described as working exclusively in a sedentary job sitting ninety-nine percent of the time. He also signed a Physician Certification Form stating that Ms. Lewallen "no longer has the ability to perform the employee's pre-injury occupation" due to permanent restrictions from the injury. Likewise, Dr. Johnson testified Ms. Lewallen "should work based on her perception of her capabilities."

Although not the only factor considered, the Court also notes Ms. Lewallen's significant impairment ratings. While unnecessary for a determination of permanent total disability, the Court notes that under the AMA Guides, Sixth Edition, Ms. Lewallen's combined ratings equate to twenty-six percent to the whole person.

Next, Ms. Lewallen's testimony about her skills, education and experience, as well as her capacity to work in other fields, supports a conclusion that she is unable to work at any occupation. Ms. Lewallen was fifty-three years old at the time of the hearing. She obtained a GED, is a certified nursing assistant, and received a phlebotomy diploma. Ms. Lewallen worked as a certified nursing assistant for twenty-eight years with a job description identifying the work as "moderate to heavy physical exertion on a regular and recurring basis." Ms. Lewallen unsuccessfully attempted to return to work at Home Healthcare as a certified nursing assistant. She documented in her Voluntary Separation that she did not want to hurt anyone by continuing to work and described pain with driving and an inability to walk on unlevel ground or to pivot due to ankle instability. Further, Ms. Lewallen has not worked since she resigned in February 2019.

The Court had the opportunity to directly observe Ms. Lewallen and found her

testimony forthcoming, honest, and self-assured. *Kelly v. Kelly*, 445 S.W.3d 685, 695-696 (Tenn. 2014). Her explanation was reasonable regarding why she is physically unable to work in other occupations due to her injuries. The Court also found Ms. Lewallen believable in her desire to return to work if she physically could do so. Likewise, the Court observed that the only times she became emotional occurred during testimony that she is unable to work as a certified nursing assistant. She did not waver on cross-examination. Her testimony regarding her past performance in that role and dedication to her profession was bolstered by testimony from Ms. Norton, an adverse witness, and Ms. Absher. The Court finds her testimony credible.

Despite all the evidence, Home Healthcare argued that permanent total disability is inappropriate because no vocational expert testified on behalf of Ms. Lewallen. However, a vocational expert is not required for a finding of permanent total disability. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 775 (Tenn. 2000).

Based on the foregoing, the Court concludes the preponderance of the evidence shows Ms. Lewallen is permanently and totally disabled. She is entitled to weekly benefits from September 30, 2020, the day after her temporary disability benefits ceased, "until [she] is, by age, eligible for full benefits in the Old Age Insurance Benefit Program under the Social Security Act." *See* Tenn. Code Ann. § 50-6-207(4)(A)(i). Because of this finding, Home Healthcare is not entitled to a credit for temporary disability benefits paid after Ms. Lewallen resigned due to her work injuries.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Ms. Lewallen's hernia and PTSD claims and dismisses them with prejudice.

2. Home Healthcare shall pay Ms. Lewallen permanent total disability benefits of $261,491.05 for the period of September 30, 2020, through April 11, 2035, which, at the stipulated weekly compensation rate of $344.91, is 758.14 weeks. It shall pay the accrued benefits from September 30, 2020, through September 28, 2021, or 52 weeks, in a lump sum of $17,935.32 and pay ninety weeks of commuted benefits in a lump sum of $31,041.90 as attorney's fees. The remaining $212,513.83 shall be paid periodically for the remaining 706.14 weeks at the rate of $300.95 per week until fully paid.[5]

3. Home Healthcare shall pay the $150.00 filing fee to the Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019).

---

[5] The Court calculated the figures through September 28, 2021.

4.  Home Healthcare shall file form SD-2 with the Clerk within ten business days of this order becoming final.

5.  Unless appealed, this order shall become final in thirty days.

**ENTERED September 29, 2021.**


_Audrey Headrick_____
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Pre-Compensation Hearing Statement
2. Deposition of Dr. Smith
3. Deposition of Dr. Johnson
4. Deposition of Dr. Layman
5. Deposition of Dr. Thomas M. Koenig (Identification Only)[6]
6. Medical records of CHOTA
7. Accident photos
8. Physician Certification Form
9. Job Description CNA
10. Separation Notice
11. Voluntary Separation
12. Combined Values Chart (Identification Only)

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Scheduling Order
4. Employer's Motion for Summary Judgment
5. Statement of Undisputed Facts in Support of Employer's Motion for Summary Judgment
6. Motion to Revise Scheduling Order
7. Amended Scheduling Order
8. Employee's Response to Employer's Statement of Undisputed Facts in Support of

---

[6] Home Healthcare objected to Dr. Koenig's IME report asserting lack of authenticity and hearsay. The Court sustains the objection.

Its Motion for Summary Judgment
9. Employer's Reply to Employee's Responsive Memorandum of Law
10. Order Denying Partial Summary Judgment
11. Employee's Pre-Compensation Hearing Brief
12. Employee's Notice of Filing Trial Exhibits
13. Employee's Witness List
14. Pre-Compensation Hearing Statement
15. Employer's Trial Brief
16. Employee's Notice of Filing Trial Exhibit
17. Employee's Notice of Filing Trial Exhibits
18. Employer's Witness and Exhibit List
19. Employee's Notice of Filing Trial Exhibit

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Order was sent as indicated on September 29, 2021.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Tony Farmer, Landon Lackey, Employee's Attorneys | | X<br>X | tony@farmerdreiser.com<br>landonlackey@hotmail.com |
| Tiffany Sherrill, Employer's Attorney | | X | tbsherrill@mijs.com |

/s/Penny Shrum          w/permission JD
_____
Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**